# Pasquinelli *v.* Southern Macaroni Mfg. Co., Appellant.

*Foreign attachment — Plaintiff attaching money in his own hands—Quashing writ—Irregularity in record—Res adjudicata— Measure of damage for breach of warranty—Acts of April 26, 1917, P. L. 102, and April 18, 1919, P. L. 72—Appeals—Practice— Questions not raised below.*

1. The plaintiff in foreign attachment may attach money in his own hands, but, if for any sufficient reason the attachment can be shown to be void in law, it may be quashed.

2. As a general rule writs of foreign attachment will not be quashed unless some fundamental irregularity appears in the record itself, and cases where this principle has been departed from will be found to present unusual features, which distinguish them from the rule as stated.

3. A motion to dissolve a foreign attachment is the proper practice, where the suit may remain as a pending action notwithstanding defects in the record.

4. A motion to quash the writ is proper, where the defects depended on are fundamental in character and such as put plaintiff completely out of court.

5. Facts which will support a motion to quash the writ will sustain one to dissolve the attachment, but the reverse is not always true.

6. An applicant to quash a writ may not aver simply a defense on the merits, or a good legal answer to the alleged debt itself, he must point to some defect in the record which renders the proceeding fundamentally irregular and void.

7. If the most that is averred is a defense on the merits, or simply a good legal answer to the alleged debt itself, such a defense must be developed at the trial, unless an agreement on the facts, or something tantamount thereto, appears, which shows a case so fully developed that, if on trial, it would require binding instructions for defendant.

8. Under the Acts of April 26, 1917, P. L. 102, and April 18, 1919, P. L. 72, the appellate court, on appeals from orders on motions to quash or dissolve foreign attachments, will examine the proofs to see if there is any evidence to warrant the findings of the trial court or to sustain the action complained of; but, in making such examination, the prevailing presumption "that everything was done rightly and according to law," still holds.

9. As the Act of 1917 allows an appeal from the refusal to quash a writ, which is an interlocutory order, the usual rule governing such orders applies, and the record must present plainly a clear abuse of discretion, before a reversal can be had.

10. Where a writ of foreign attachment is quashed the record showing such action must be self-sustaining.

11. On an appeal from an order refusing to quash a writ of foreign attachment, a question not raised in the lower court will not be considered.

12. Measure of damages for breach of warranty as to quality of personal property, not decided, because not properly raised.

13. On such appeal, where it appears that defendant claimed the case was res adjudicata by a prior suit between the same parties in another court, the appellate court will not pass on this question if it appears the record of the proceedings in the other court was not made part of the record in the case appealed.

14. Not only the pleadings but also the stenographer's notes of the first trial must be given in evidence in the second before the question of res adjudicata can be reviewed.

Argued October 25, 1921. Appeal, No. 54, Oct. T., 1921, by defendant, from order of C. P. Allegheny Co., Oct. T., 1920, No. 525, discharging rule to quash writ of foreign attachment, in case of G. Pasquinelli, trading as Italian Sausage & Provision Co. v. Southern Macaroni Mfg. Co. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Rule to quash writ of foreign attachment. Before SHAFER, P. J.

The opinion of the Supreme Court states the facts.

Rule discharged. Defendant appealed.

*Error assigned,* inter alia, was above order, quoting it.

*A. E. Kountz,* with him *Geo. L. Schuyler* and *C. A. Fry,* for appellant.—Under the general rule of res adjudicata plaintiff was required to set off his claim in the former case, as it would be legally cognizable in the county court proceeding: Nernst Lamp Co. v. Hill, 243 Pa. 448; Raisig v. Graf, 17 Pa. Superior Ct. 509.

An attempt by this same plaintiff to escape payment of a debt by an action of foreign attachment after verdict against him in the county court was unsuccessful: Pasquinelli v. Gross, 74 Pa. Superior Ct. 296.

An inspection of the record shows that nothing alleged by plaintiff is sufficient to overcome the presumption of res judicata arising from the county court verdict and judgment.

*Ralph H. Frank,* with him *J. M. Redden,* for appellee. —The issues here are not res judicata because these issues were not required to be raised in the county court, were not raised, and could not have been raised in view of the limitation of the jurisdiction of that court to $1,500: Schwan v. Kelly, 173 Pa. 65; Jackson v. Thomson, 215 Pa. 209; Penna. Laundry Co. v. Land T.

& T. Co., 74 Pa. Superior Ct. 329; Reading Co. v. Spink, 263 Pa. 445.

The present action is not barred by the failure of plaintiff herein to raise it as a set-off or counterclaim in the county court.

Even if the present issues were res judicata, that is not a question which could be raised by a petition to quash the writ of foreign attachment: Downing v. Philips, 4 Yeates 274; Pasquinelli v. Gross, 74 Pa. Superior Ct. 296.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1922:

In this case, a motion was made to quash a writ of foreign attachment, on the ground that the indebtedness alleged by plaintiff had been effectually adjudicated against him in a suit between the same parties previously determined by another court of Allegheny County; the motion was overruled and defendant has appealed.

In 1918, defendant sold and delivered to plaintiff 4,865 boxes of macaroni, for $8,931.75; plaintiff paid $7,647.85, leaving a balance of $1,283.90; on April 7, 1919, the present defendant sued the present plaintiff, in the County Court of Allegheny County, to recover the balance due. Defendant's history of the case, on this appeal, states that plaintiff, as defendant in the former action, there filed an affidavit of defense, alleging that, by agreement between the parties, certain of the macaroni had been returned because unmerchantable, and that such return extinguished and satisfied the debt then in suit; but, as is later pointed out in this opinion, the pleadings in the county court have not been properly brought before us, so we cannot go into the details of that defense,—it is enough to say the case resulted in a judgment for the then plaintiff. On July 28, 1920, the present action of foreign attachment in assumpsit was instituted against the plaintiff in the judgment in the

county court, and the defendant there, in the capacity of plaintiff here, summoned himself as garnishee, attaching the judgment which he owed the present defendant. Subsequently the plaintiff filed an affidavit of cause of action, claiming $5,386.90 damages for breach of warranty of the quality of the 4,865 boxes of macaroni; defendant appeared specially and moved to quash the writ of attachment, alleging that plaintiff, when defendant in the county court, might have pleaded his present cause of action as a set-off, therefore the matter was res adjudicata by the judgment against him in that case.

The foregoing statement of facts is taken from defendant's paper-book; plaintiff agrees to it, except that he says, (1) the damages claimed in the case at bar "relate only to 4,171 boxes of macaroni, excluding the 694 boxes which were the subject of the [former] litigation"; and (2), that, owing to the provisions of section 5 of the Act of April 2, 1913, P. L. 21, 28, limiting the jurisdiction of the county court to $1,500, that tribunal could not have adjudged the instant claim, as a set-off, had he attempted to present it: see, on the last point, Barker v. Remov, 69 Pa. Superior Ct. 138, 142, and Holden v. Wiggins, 3 P. & W. 469.

We shall not now discuss the points made by plaintiff as to the prior litigation between him and defendant, nor the latter's answering positions, since we deem that course unnecessary to a proper decision of the governing question before us on this appeal, which is, simply: Upon the record brought here, does it appear the court below erred in refusing to quash the writ of foreign attachment?

The question just stated must be disposed of on the record before us without treating any of the matters mentioned in the last two paragraphs as controlling factors, as will be shown during the course of this opinion; but it is necessary to an understanding of the case that we refer to them, and later, when returning to the facts here involved, perhaps to pass on at least one

phase of plaintiff's second contention above. Before proceeding further, however, we shall state some relevant general principles which must be kept in mind in reaching our final conclusion on the question for determination. The reiteration of these principles in the form in which we shall present them, together with a consideration of certain enlightening authorities, may also prove helpful in straightening out the confusion into which the profession has been led, or has fallen, as indicated by the number of appeals recently before us in litigation of this class.

The plaintiff, in a proceeding of the nature of the case at bar, may attach money in his own hands belonging to the defendant (Hurt v. Fuller Canneries Co., 263 Pa. 238, 240, 243) ; but, if for any sufficient reason the attachment is shown to be void in law, it will be quashed.

At one time it was held that the power to quash writs was confined to cases where the record disclosed the proceedings to be clearly irregular and void (Crawford v. Stewart, 38 Pa. 34, 36; Steel v. Goodwin, 113 Pa. 288, 292) ; subsequently, in certain exceptional instances (which we shall notice later), evidence dehors the record was received to prove grounds for quashing writs. The general rule still is, however, that writs will not be quashed unless some fundamental irregularity appears in the record itself, and cases where this principle has been departed from will be found to present unusual features, which distinguish them from the rule as stated.

There are numerous cases where, on appeal, the courts have reversed orders, quashing writs of foreign attachments or dissolving the attachments, and others where they have sustained refusals to grant such relief; among these the following are instructive: Pleasants v. Cowden, 7 W. & S. 379; Lindsley v. Malone, 23 Pa. 24; Crawford v. Stewart, 38 Pa. 34; Murdock v. Steiner, 45 Pa. 349; Lorenz v. Orlady, 87 Pa. 226; Steel v. Goodwin, 113 Pa. 288; First Nat. Bk. v. Crosby, 179 Pa. 63; Seanor v. Fitt (No. 2), 263 Pa. 391; Pottash v. Harten-

feld Bag Co., 267 Pa. 96; Diamond City, etc., Co. v. Murdock-James Co., 270 Pa. 455; Dempsey v. Petersburg S. & I. Co., 26 Pa. Superior Ct. 633.

Cases where the appellate courts have affirmed the quashing of writs of attachment, so far as they have been called to our attention, or our research has disclosed, are not many; and the instances where such quashing was done on evidence dehors the record are so exceptional that they may be noticed with profit.

In Downing v. Phillips, 4 Yeates 274, the defendant produced the record of the court of another state, showing a judgment against him in favor of the plaintiff, involving a prior adjudication of the debt sued for in the attachment proceedings; also disclosing that execution had issued on this foreign judgment and the defendant had, on entering security, been granted an injunction to restrain such execution. Upon these facts, this court, sitting at nisi prius, quashed the writ of attachment, saying that "to entertain suit would be a race for jurisdiction highly unbecoming the relative character of the individual states of the union toward each other"; but, so far as the scanty report of the case makes it known, the real point of controversy between the parties seems to have been a contention by the appellant that the chancellor of the foreign jurisdiction should not have stayed execution, because "no equity appeared in the bill" exhibited there; which matter, this court, of course, declined to pass upon. The right to the summary relief sought,—the quashing of the writ,—was neither questioned nor discussed.

Nicoll v. McCaffrey, 1 Pa. Superior Ct. 187, (opinion by President Judge RICE) is an instance where an effort was made to attach property of a married woman, to satisfy a judgment debt of her husband. In other words, it was a case where an injunction could properly have issued to restrain an execution creditor from selling the property attached (Hunter's App., 40 Pa. 194), and the quashing of the writ would be explainable on that

ground alone; but the case was decided for the reason that, under the law as it then stood,—confining the appellate court to a limited review of the record,—there was nothing before that tribunal to show the court below erred in the exercise of its discretion.

In Pasquinelli v. Gross, 74 Pa. Superior Ct. 296, 298, where a rule to "quash or dissolve" an attachment was made absolute, and affirmed on appeal, there was an admission of record by the appellant that his cause of action had already been determined against him in a prior proceeding; and this fact sufficiently explains that case.

In Brown v. Ridgway, 10 Pa. 42, there is some confusion as to whether the application was to dissolve the attachment or to quash the writ; however that may be, the order granting the relief prayed for was affirmed simply because, under the limited review then allowed, there was nothing on the record to show an abuse of discretion; this is true also of Holland v. White, 120 Pa. 228, and Shueck v. Freeman, 55 Pa. Superior Ct. 38, where the applications granted and affirmed were to quash writs.

Probably there are other cases, unmentioned here, where writs were quashed; but we think research will disclose that, wherever this was done on evidence dehors the record, and afterwards affirmed, either the appropriateness of the remedy was not questioned on appeal, or, if that point was considered, the relief granted is explainable on some such exceptional grounds as indicated in the cases above reviewed where the fatal defects did not appear on the face of the record.

The Pennsylvania authorities, down to certain recent cases, to which we shall refer directly, held consistently that the determination of an application either to quash the writ or to dissolve an attachment was not reviewable, because it was a matter within the discretion of the court below, and, since no bill of exceptions lay to bring the evidence relating thereto upon the record, the practical effect of this was that such discretion could not be

reviewed (Brown v. Ridgway, 10 Pa. 42; Lindsley v. Malone, 23 P. 24; Holland v. White, 120 Pa. 228; First Nat. Bk. v. Crosby, 179 Pa. 63; Dempsey v. Petersburg S. & I. Co., 26 Pa. Superior Ct. 633); and these principles explain many of the cases decided under the law as it stood prior to the year 1917.

The Act of April 26, 1917, P. L. 102, expressly allows "appeals from orders of court entered on motions to quash or dissolve writs of foreign attachment," and provides that "the evidence on which the case was heard and disposed of in the court below, together with the opinion of the court thereon, shall constitute a part of the record"; further, that the appellate court shall consider the evidence and opinion brought before it and "dispose of the case according as the law and the facts shall be found therefrom": see also the general Act of April 18, 1919, P. L. 72, making the testimony part of the record in all appellate proceedings. Under this legislation, we examine the proofs to see whether there is any evidence to warrant the findings of the trial court, or to sustain the action complained of (Hand's Case, 266 Pa. 277, 281); but, in making such examination, the prevailing presumption "that everything was done rightly and according to law" (Brown v. Ridgway, 10 Pa. 42, 43) still holds and, since the Act of 1917 allows an appeal (like the one before us) from the refusal to quash a writ, which is an interlocutory order, the usual rule governing appeals from such orders applies, and the record must present plainly a clear abuse of discretion, before a reversal can be had. It is also established that, where a writ is quashed, the record showing such action must be "self-sustaining": Seanor v. Fitt (No. 2), 263 Pa. 391, 393.

There is no little confusion among the Pennsylvania authorities as to the distinction between a motion to quash a writ of foreign attachment and one to dissolve the attachment. While President Judge RICE, in Nicoll v. McCaffrey, 1 Pa. Superior Ct. 187, 193, points to this

confusion, he does not attempt to indicate the difference between the two, or to reconcile the various decisions on the subject; which we conclude, after reading a host of them, would be a task both unnecessary and unprofitable to undertake at this time. It is sufficient to say that the broad, or general, distinction is this: Where, notwithstanding the defects pointed out, the suit may remain, as a pending action, a motion to dissolve is correct practice; on the other hand, where the defects depended on are fundamental in character and such as to put plaintiff completely out of court, a motion to quash the writ is proper. To particularize: where security is entered under section 62 of the Act of June 13, 1836, P. L. (1835-36) 572, 583, the motion to dissolve is right, for the statute so ordains; the only other instances where the motion should be interposed are where one who wants relief desires to take advantage of defects in the statement of cause of action, or in the case thereby shown, which are not of such a fundamental nature as to sustain a motion to quash the writ. In Bergman v. Straus, 264 Pa. 439, 441-2, we note a distinction between "quashing or refusing to quash a writ of foreign attachment" and the quashing of the attachment itself, calling attention to our recent case of Mindlin v. Saxony Spinning Co., 261 Pa. 354, as an example of the latter class, the motion in that case being to dissolve the attachment. Of course, facts which would support a motion to quash the writ will sustain one to dissolve the attachment, but the reverse is not always true.

An applicant to quash a writ may not aver simply a defense on the merits, or a good legal answer to the alleged debt itself, he must point to some defect in the record which renders the proceeding fundamentally irregular and void (Crawford v. Stewart, 38 Pa. 34, 36; Steel v. Goodwin, 113 Pa. 288, 292), or if (as in exceptional instances is allowed) evidence dehors the record is produced to establish defects therein, the defects depended on must be of a character to put plaintiff

completely out of court, such as that the writ was issued in practical contempt of a previously issued decree of a chancery court forbidding such proceedings (Downing v. Philips, 4 Yeates 274), or that it issued in a case where an injunction, if asked for, would undoubtedly have gone out against the attachment (Nicoll v. McCaffrey, 1 Pa. Superior Ct. 187), or that one of the statutory props required to sustain the attachment is missing,—for example, that the person owning the property attached is a resident of the State and was within the county where the writ issued at the time of its issuance; or, again, that the property in question is, by statute, exempt from attachment; or that, for some other such reason, foreign attachment does not lie. If the most that is averred is a defense on the merits, or simply a good legal answer to the alleged debt itself, such a defense must be developed at trial, unless an agreement on the facts, or something tantamount thereto, appears, which shows a case so fully developed that, if on trial, it would require binding instructions for defendant: Pasquinelli v. Gross, 74 Pa. Superior Ct. 296.

To return to the facts in hand, plaintiff's affidavit of cause of action,—after averring the macaroni in controversy, instead of being up to the alleged warranty of quality, had proved "worthless for human consumption as food," and that he had therefore been "compelled to, and did, dispose of said merchandise as feed for chickens," realizing $2,260.95,—states that he arrived at his loss, which constitutes the present claim, by deducting the amount received by him from $7,647.85, the sum he had previously paid defendant.

The measure of damage for breach of warranty as to quality of personal property, is well established; the purchaser is entitled to the difference between the value of the goods as warranted and their value in the condition complained of (Sedgwick on Damages, 290, and Pennsylvania cases cited in Reynolds v. Ramsey, 56 Pa. Superior Ct. 97, 100), the value contemplated being

"market value" (Himes v. Kiehl, 154 Pa. 190, 196), and, as to this, the price paid or agreed to be paid the seller, in the absence of better evidence, is prima facie proof of the market value of the articles in the condition warranted, at least so far as the seller is concerned; that is, if the purchaser sees fit to adopt such proof: Reynolds v. Ramsey, supra. When the merchandise in question is expressly, or in effect, alleged to be unsalable on the open market (as in the present case), the price at which it was disposed of may, or may not, according to the attending circumstances, be evidence of the obtainable value of the articles in their actual condition: Reynolds v. Ramsey, supra, and Freyman v. Knecht, 78 Pa. 141, 144.

In view of the guiding principles already stated, we cannot hold,—as defendant contends,—it is evident from plaintiff's affidavit of cause of action that, in fixing his damages at more than $1,500, he adopted a wrong and purely arbitrary measure, and therefore had not shown his claim to be beyond the jurisdiction of the county court; but, even if it did appear that plaintiff had a wrong measure of damages in mind, that contention is put forth for the first time on this appeal, so far as the record before us indicates. Defendant's petition to quash the writ of attachment makes no mention of the amounts claimed by plaintiff; had it done so, and were plaintiff's measure of damages wrong, the court below might have allowed an amendment (Hurt v. Fuller Canneries Co., 263 Pa. 238, 241, 242), and the record might have come before us in different form. This calls for application of the rule that, points "not raised in the lower court will not be considered on appeal" (Hurt v. Fuller, 263 Pa. 238, 241), and, heeding that rule, we cannot pass on the contention under discussion.

While each of the various rules hereinbefore noted has its place in the case, those that really govern our decision, in the last analysis, are these: (1) Where a court quashes a writ, it is required that the record,

showing such action, shall be "self-sustaining"; and (2) although an appeal is allowed from the refusal to quash a writ, yet such refusal is but an interlocutory order, and hence, to justify a reversal, the record must clearly show a plain abuse of discretion. When these two rules (which are among those reviewed earlier in the present opinion) are kept in mind, it becomes manifest this court cannot hold that the writ of attachment now before us should have been quashed; for here the record fails to show the facts essential to a proper determination of the plea of res adjudicata, depended on by appellant as the sole warrant for the relief asked, or to make it plain those facts were presented to the court below in such form—either as established, admitted, or uncontroverted,—that their legal effect could be passed on, so far as the plea in question is concerned. In this connection, although plaintiff's affidavit of cause of action in the present suit refers to the record of the county court, it is neither attached thereto nor otherwise exhibited; and, so far as we have any light on the subject, such record may never have been actually produced in the court below for official examination. We may add that, while the pleadings in the county court are printed by appellant, yet, never having been formally brought upon the record of the common pleas, they are not properly here; moreover, the evidence in the county court is not even printed on this appeal, and there is no suggestion that it was before the court below.

Of course, in passing on a plea of res adjudicata, "recourse must be had to the pleadings" in the respective actions (Jackson v. Thompson, 215 Pa. 209, 212), to see if the issues in the one are the same as in the other, and to decide as to their comprehensiveness, the judgment in the first action being inconclusive of matters neither up for determination in that case (Jackson v. Thompson, supra, 214) nor material to issues necessarily involved in, or inseparable from, those then before the court (Reading Co. v. Spink, 263 Pa. 445), even though

such matters "may have been injected into the trial": Jackson v. Thompson, supra, 214; Schwan v. Kelly, 173 Pa. 65, 72; Pa. Laundry Co. v. Land T. & T. Co., 74 Pa. Superior Ct. 329, 337. In short, till something is shown to the contrary, the pleadings are assumed to fix the issues; but, in these practical days, issues which have never been properly pleaded, are often, by mutual consent, tacitly allowed as controlling in the trial of cases, the pleadings, after verdict, being treated as amended (Fisher v. Fidelity M. L. Co., 188 Pa. 1, 11; Pittsburgh Co. v. Dravo Co., 272 Pa. 118); therefore, when the pleadings in the first case have not been properly brought upon the record of the second, and the stenographer's notes of the first trial have not been produced in the second (which is true here), it can hardly be said, as a matter of law, that the court below erred in refusing to sustain a plea of res adjudicata.

The case before us certainly requires a view of the entire record of the county court, to determine whether or not the matters comprehended by plaintiff's present claims were in any way adjudicated or affected by the proceedings in that tribunal; for all we know, there may have been admissions, or something tantamount to admissions, on that record, which controlled the verdict and judgment there entered. The defendant in that case (plaintiff here) may have admitted that the defense there set up (which he now asserts as absolutely independent of his present claim for damages) was the only one he had against the indebtedness then in suit; or the full record of that case may show that the defendant there (plaintiff here) treated facts which enter into his present claim in such a way as to constitute a severance of what he here calls an entire amount, and asserts to be, in law, nonseverable, and that parts of such claim were in fact severed and passed upon. (For a discussion of severable and nonseverable claims, see Carvill v. Garrigues, 5 Pa. 152, 153; also Holden v. Wiggins, 3 P. & W. 469, 474.) Of course, we cannot assume any

of these conditions did in fact exist; but what the true situation may have been as to such matters, and others affecting plaintiff's present claims, the record before us fails to show. It is clear, however, that this is not an instance where the court below, on the information furnished it, could have sustained defendant's plea of res adjudicata, for the purpose of quashing the writ of attachment; whether or not that plea will constitute a good legal answer to all or any part of plaintiff's claim, will have to be decided, if properly raised, at the trial of the case, which is the usual time for determining such matters. What we now decide, as controlling, is that the court below did not err in refusing to quash the writ of attachment, for this record does not present a case for that summary form of relief.

The assignments of error, which go to the points determined, are overruled; the others are dismissed as immaterial.

The order appealed from is affirmed.